LEMMON, Judge.
Defendant has appealed from judgments in seven consolidated cases which found its bus driver liable in an intersectional collision. The appeals primarily question whether the bus driver had time to avoid the accident after he saw or should have seen the automobile violate his right of way.
The accident occurred on a clear, dry afternoon at the intersection of Elysian Fields Avenue and North Prieur Street. At that point Elysian Fields was a large north-south divided thoroughfare. On each side of a 63-foot wide neutral ground were three lanes for travel, each approximately 12 feet *274 in width, and a narrower parking lane. Prieur was an undivided two-lane street, 30 feet in width. Stop signs controlled traffic entering the intersection from Prieur.
Prior to the collision the bus, which had all seats filled and about 20 passengers standing, had been traveling north on Elysian Fields. The bus had made a service stop at the intersection one block before Prieur and was not scheduled to stop at Prieur Street.
The driver testified: He started from the service stop and had traveled about one-fourth of the block, at which point he had attained a speed of 10 to 15 miles per hour and was accelerating. Across the neutral ground to his left he noticed a green Cadillac crossing the southbound lanes of Elysian Fields, but observed nothing unusual about the car’s movements or the driver’s actions. When the bus was about three-fourths down the block, he saw the Cadillac stop at the edge of the neutral ground. He directed his attention away from the Cadillac, assuming it would remain stopped, and he first became aware of the imminence of a collision when he noticed a green flash or blur from the left, at which time he was about IV2 to 6 feet away from the Cadillac. He jammed on his brakes when he was about five feet from the car and his brakes caught, but did not stop the bus so as to avoid a collision. A “few seconds” elapsed between the time he applied the brakes and the time of impact, in which the left front of the bus struck the right side of the car, between the front fender and the front door. After the accident he did not find any. skid marks made by the bus, but did notice some tire marks made by the Cadillac.
The driver of the Cadillac, a non-resident who was served under the long arm statute but who made no appearance, told the investigating officer after the accident that he did not see the bus prior to the collision.
The investigating officer found five feet of light tire marks just behind the front wheels of the bus, which he identified as the kind he often found just before the tires got hot enough to start leaving skid marks. The officer also found tire marks left by the Cadillac, which began in an eastbound direction and then went perpendicular in a northbound direction. He characterized the northbound marks, five feet in length, as scuff marks made by the Cadillac being pushed northward by the bus after the collision.
Several passengers testified that the bus had been traveling at a constant speed of about 25 miles per hour when they saw a green flash come across the front of the bus, followed by the impact. One passenger, Patricia Morris, testified that when several passengers uttered exclamations, she looked up immediately and caught a glimpse of the top of the car, adding, when asked if the bus driver applied his brakes simultaneously with her sighting the car, that “I don’t know if we (she and the driver) both saw the same thing at the same time but somewhere close about that time he did hit the brake”. Answering a question as to how much time elapsed “between the time the bus driver hit the brakes and the impact of the collision”, she estimated it “couldn't have been more than a few seconds”.
This overall testimony strongly suggests that the bus driver and the passengers saw the Cadillac unexpectedly enter the path of the bus at about the same time. Furthermore, the tire marks constituted mute evidence that the bus driver saw the Cadillac in sufficient time to react and at least begin braking, although he incorrectly stated that he had not sensed the imminence of danger until he was a few feet away from the Cadillac.
Imposition of liability depends upon a determination of the duty of each driver and an application of that duty to the facts of this case. The driver of the Cadillac had the duty to yield the right of way, and although he stopped at the edge of the neutral ground, he did not wait in the stopped position until he could cross the intersection safely. He was therefore negligent, and his substandard behavior was a legal cause of the accident.
*275 The bus driver, on the other hand, had the right of way, and when he saw the Cadillac stopped at the edge of the neutral ground, he had the right to assume that the Cadillac would remain stopped in obedience to the traffic device controlling the intersection. Of course, once the Cadillac demonstrated that it was not going to remain stopped, a duty devolved upon the bus driver to discover the movement of the Cadillac and to take reasonable steps in response thereto. The determinative question as to his liability is whether he had sufficient time, after the duty arose to discover the Cadillac’s movement, to take reasonable action which could have avoided the accident.
The description of the Cadillac by all witnesses as a green flash or blur compels the conclusion that the car moved out quickly from its stopped position in the neutral ground. If the bus driver had reacted the very instant the Cadillac started up, he theoretically may have been able to avoid the accident.[1] Yet the bus driver, who is held to the highest degree of care, was required to exercise overall observation and could not concentrate solely on the stopped vehicle which all motorists should have been able to assume would remain stopped. Furthermore, even a bus driver had no duty to react the very instant the stopped car moved forward — it may have been starting so as to cross behind the bus or it may have been turning left into another lane. And, of course, a bus driver also has a duty to avoid unnecessary sudden and violent braking.
If the bus driver in this case is allowed a reasonable interval of time to apprehend the danger that a motorist will disregard his right of way, there is simply no evidence that he had sufficient time thereafter to avoid the accident. Indeed, the physical facts indicate that he did not. The trial judge erred in placing too great a duty on a right of way motorist, even if that motorist was driving a transit bus.
For these reasons, the judgment of the trial court is reversed, and it is now ordered that the suit be dismissed at plaintiff’s cost.

REVERSED AND RENDERED

GULOTTA, J., concurs and assigns reasons.
SCHOTT, J., dissents and assigns reasons.
GARSAUD, J., dissents for the reasons assigned by SCHOTT, J.

. If the coefficient of friction of the street surface is assumed to be 0.75, then the maximum velocity the car could have attained in 30 feet (across two and a half lanes) was 38 feet per second (26 miles per hour). [The formula is V2 = 2 (32.2) D u]. Lacy, Scientific Automobile Accident Reconstruction, Ch. 6, p. 581 (1968). And if the car did move from the stopped position at maximum speed, the time elapsed between start up and impact was 1.57 seconds. (The formula is T = V 32.2 u). Lacy, supra, Ch. 1, p. 1139.
Yet a vehicle traveling at 15 miles per hour, with brakes at maximum efficiency, takes 0.91 seconds, plus a reaction time of 0.75 seconds, to brake to a stop on a surface with a 0.75 coefficient of friction. And a vehicle traveling faster takes even longer.